## GEORGE M. FOOTE
### v.
## CHARLES J. OFF & CO., ET AL.

*Contracts—Construction of—Partnership—Intent of Parties.*

In an action brought against a party to whom plaintiff had sold goods, and another, to recover their price, in which it was sought to charge such other as a partner of the vendee by virtue of a contract which had been executed by them, and which was introduced in evidence, this court holds that the true intent of the contract was merely to give security for certain debts of the vendee, and that no partnership was created.

[Opinion filed December 12, 1892.]

APPEAL from the Circuit Court of Henderson County; the Hon. JOHN J. GLENN, Judge, presiding.

Messrs. KIRKPATRICK & ALEXANDER, for appellant.

Mr. ARTHUR KEITHLEY, for appellees.

MR. JUSTICE CARTWRIGHT. This suit was brought by Charles J. Off, doing business under the name of Charles J. Off & Co., against George M. Foote and Ira Putney as partners, doing business under the name of Ira Putney, to recover for merchandise sold and delivered. Putney was defaulted and Foote filed a plea of the general issue and a sworn plea denying the partnership. Issues were joined

·and the cause was submitted to and tried by the court without a jury, resulting in a finding and judgment for plaintiff, from which Foote appealed.

The facts appearing on the trial were as follows: Ira Putney was in business as a merchant at Stronghurst, Illinois, in 1889, under the name of Ira Putney & Co. He had borrowed money from Foote and had bought some land from him for which he held a contract for a deed. Putney had put improvements on the land and the contract provided for a deed on payment of $3,350, which sum was made up of the price of the land and the advance made. Foote was also surety for Putney on two notes for $1,200 and $1,300 respectively. About December 4, 1889, Putney was in need of more funds to carry on his business and applied to Foote to become security for him on notes to the amount of $7,000. It was agreed that Foote should do so and that Putney should give him security on the goods. In pursuance of that arrangement Putney drew up two papers dated December 4, 1889, which were executed between the parties. The first was a bill of sale from Putney, by the name of Ira Putney & Co., to Foote, of all the stock or merchandise and unbalanced book accounts. The second was an agreement signed by Putney and Foote in which Foote agreed to allow Putney the privilege of using the stock of merchandise and buying and selling, and Putney agreed to do the business without cost to Foote, to pay all the clerk hire, freight bills and taxes, to apply all the profits of the business to the payment of the said indebtedness of $7,000, indicated by notes signed by said parties, and to pay the principal and interest of said notes as required or specified therein. It was in said contract further agreed that Putney should not incur any indebtedness on the stock, that all goods purchased should be paid for on receipt of same, that all books and accounts were to be shown at all times on demand of Foote, that the goods were not to be removed from the stores they then occupied without consent of Foote, that Foote should have what goods he might use at wholesale cost prices, that said sum of $7,000 should be ap-

plied and used in said trade, and that the business should be carried on in the name of Ira Putney. The $7,000 mentioned in this agreement was raised by making four notes dated December 5, 1889, for $1,750 each, with interest, and signed by Putney and Foote, upon which the money was borrowed. Putney was in fact the principal and received and used the proceeds of the notes as his own, and Foote was surety in the transaction. Putney used part of the $7,000 so obtained, in paying off the notes of $1,200 and $1,300, on which Foote was surety, and the remainder he used in improving his property and in business.

The store business was carried on by Putney in his own name under the foregoing agreement until January, 1891, when the goods, except a small portion worth five or six hundred dollars, were destroyed by fire. The goods had been insured by Putney and the policy had been assigned to Foote, who received $2,960 on the policy on account of the loss. He gave Putney $2,413 of this sum and retained the balance of the insurance money to repay amounts paid as security for Putney. In consequence of the fire a new agreement was made, dated January 26, 1891, which is as follows:

"This agreement, made this 26th day of January, A. D. 1891, between George M. Foote of the first part and Ira Putney of the second part, witnesseth: that said George M. Foote, party of the first part, in consideration of the covenants of the party of the second part hereinafter mentioned contained, doth agree with the party of the second part to allow him the privilege of using the stock of goods and merchandise, the privilege of buying and selling merchandise, but not to incur or make any liens or mortgages on stock, all goods purchased to be paid for when received, or when sold, and at the end of each sixty days to show all books and accounts if demanded by party of the first part. The party of the second part in consideration of the covenants of the party of the first part, agrees to do all matters and things connected with the business of a merchant without cost for expenses to party of the first part, and to apply all profits of the business to the payment of the indebtedness of $7,000. The notes

indicating said indebtedness are signed by Ira Putney and George M. Foote, and are due and payable in one, two, three and four years from December 5, 1889. It is further agreed between the parties that the goods shall not be removed from place to place without consent of the party of the first part, said party of the second part to pay all clerk hire, freight bills, taxes on stock, said business to be carried on under the name of Ira Putney. Payments to be made on principal as well as interest on said notes for $7,000, to be paid by Ira Putney as required or specified in said obligation. Party of the first part to have what goods he uses in his own family at wholesale price. The sum of $2,400 insurance money and all (the above sum and goods is a part of the within described $7,000) goods, notes and accounts to be used and applied in the business above specified, and report given as above specified.

The stock of goods to full and complete or credits on book to show the same of the sum stated herein.

Signed,     Ira Putney,
George M. Foote.

The above agreement as above stated is considered for the removal of the goods from place to place, on the account of the former place being destroyed by fire, as the original contract described; that the said Ira Putney to continue in business in Stronghurst on the terms described in the original contract dated December 4th, 1889, signed and sealed by Ira Putney & Co., stock of goods in store to be insured at reasonable rate and be signed over to G. M. Foote.

It is agreed that the party of the second part shall report all purchases and daily sales to party of the first part.

Ira Putney."

Putney continued in business as before until December 4, 1891, when Foote took possession of the goods and sold them. The goods on account of which this suit was brought were bought by Putney in his own name after the agreement of January 26, 1891, and credit was given to him alone. There is no claim that Foote became liable by reason of his being held out to the public or to appellee as a partner with Putney.

He was not so held out and credit was not given with the belief or understanding that a partnership existed, but a liability is claimed on the ground that the agreements entered into as above stated created a partnership. It is said that Foote furnished the capital, that Putney did the work and bore the expenses, and that the profits were shared between them by payment on an indebtedness for which both were liable. A consideration of the evidence will show that these propositions are not sustained by it. Foote did not furnish the capital, but it consisted of Putney's goods on hand and money borrowed by him for which Foote was surety. The intent of the contract was to give Foote security against his liability as surety. The profits were to be applied on an indebtedness which, as between the parties to the contract, was wholly the indebtedness of Putney. The only beneficial interest which Foote acquired was the right to buy goods for his own use at cost, and that was manifestly insufficient to constitute the business for the common benefit. The bill of sale and contract constituted a single transaction, and all the provisions taken together show that what was intended was to afford security to Foote through the stock and the insurance on it, and by means of the application of the profits in payment of the debt for which he was surety. When insurance money was received it was mainly used to replace goods destroyed, and the new goods were subject to substantially the same agreement as before. The question whether the transaction would be valid as a security as against creditors of Putney does not arise in this case, and the only question is whether a partnership was created which would make the parties to the agreement jointly liable for the claims of appellee.

We think that the evidence did not suffice to prove a partnership and the judgment will be reversed and the cause remanded.

*Reversed and remanded.*