## Upham & Gordon v. Clarence G. Richey et al.

1. AMENDMENTS—*Changing Parties.*—Two persons were sued jointly as partners; one of them died pending an appeal; when the suit was redocketed in the Circuit Court, the plaintiffs dismissed the suit as to the surviving partner, made the personal representatives of the deceased partner defendants, and amended their declaration, declaring against him alone as principal debtor. *Held*, not error.

2. PRACTICE—*Objections to Amendments.*—Objections to amendments of pleading, if not made in apt time, must be considered as waived.

3. SALES—*Whether on Commission or Absolutely.*—Where a person takes goods, and the question arises, whether he is a purchaser or mere agent to sell on commission, if he is given the option to pay for the goods and keep them, then he is a purchaser, and the title passes absolutely as a matter of law.

4. BILL OF SALE—*May be Shown to be a Mortgage.*—Where a contract is entered into between two persons, concerning the custody and sale of a stock of merchandise, and for the security of one, a bill of sale absolute on its face is given, such bill may be shown to have been given as a mortgage.

5. SAME—*Implied Provisions—When Held to be a Mortgage.*—A merchant made an absolute bill of sale of his stock of goods to a party who became a security upon his notes for the goods, and a contract was entered into between them, providing that the merchant should be allowed the privilege of carrying on the business at his own expense, and should apply all profits to the payment of the notes, but nothing was said as to whom the goods should belong after such payment. *Held*, that there was an implied provision that they should belong to the merchant, as the relation of the parties was that of mortgagor and mortgagee.

Assumpsit, for goods sold and delivered. Appeal from the Circuit Court of Henderson County; the Hon. JOHN J. GLENN, Judge, presiding. Heard in this court at the May term, 1895. Affirmed. Opinion filed December 10, 1895.

J. J. TUNNICLIFF and J. A. McKENZIE, attorneys for appellants.

KIRKPATRICK & ALEXANDER, attorneys for appellees.

MR. JUSTICE LACEY DELIVERED THE OPINION OF THE COURT.

This is the same case, in substance, depending upon the same facts as the case decided in this court, of Foote v. C. J. Goff & Co., 45 Ill. App. 516. The judgment in that case was reversed and the cause remanded. George M. Foote was sued as a partner with Ira Putney. In the meantime Foote died, and the appellees were appointed his executors, and the appellants, after the case was put on the docket in the Circuit Court for a new trial, dismissed the suit as to Putney, and made the appellees, the personal representatives of Foote, parties defendant. The declaration was amended and declared against Foote as principal debtor alone. It was not error to amend the declaration, dismiss the suit as to Putney, and make the executors of George M. Foote parties defendant. The appellees pleaded to the declaration, and in so doing waived any right to object, even if they had a right, which we do not think they had, previously.

As will be seen from the statement of the case when it was here before, the liability, or the non-liability, of appellee, will depend upon the proper construction to be given to the contract hereinafter to be mentioned, between Ira Putney and George M. Foote, now deceased.

The amount of appellant's claim was $1,275.48, for goods furnished and delivered to Ira Putney after the fire hereinafter mentioned, and the burning of his store and goods.

Appellants insist that George M. Foote, now deceased, was the principal in the store and was carrying on the same, purchasing and selling goods in the name of Ira Putney, and was, therefore, as such principal, liable to all parties

that sold goods to Putney to be placed in the store for sale. The decision of the case hinges upon this question. When the case was here upon a former appeal, this court held that George M. Foote, under the contract existing between him and Putney, was not a partner with Putney, and that he was not liable as such; that the contract existing between them was that of mortgagor and mortgagee. It is now insisted that Foote was the principal under the bill of sale and contract existing. The cause was tried by the court below without a jury, and the appellants submitted certain propositions of law to the court to be held, to the effect that the bill of sale and the contract in evidence, together, made George M. Foote the principal owner and proprietor of the store, and Ira Putney his agent, and that therefore the appellants ought to recover for their bill of goods sold and delivered to Ira Putney, agent of Foote. The court refused to hold these propositions of law, and found against the appellants, and rendered judgment against them for costs, from which judgment this appeal is now taken.

It seems from the evidence that prior to December 4, 1889, George M. Foote was security on some notes of Ira Putney to the amount of about $2,500, and that Putney was desirous of going into business in Stronghurst, in Henderson county, Illinois, and by agreement between Foote and Putney, the latter borrowed $7,000, and gave four notes, with Foote as security thereon, for $1,750 each; this money was used, in part, by Putney to pay off the previous indebtedness, and the balance was used in buying goods for the stock of merchandise hereinafter mentioned.

The contract bears date December 4, 1889, and was in two parts; the first was an absolute bill of sale on its face, reciting a consideration of $7,000, and selling and conveying to Foote all the stock of goods of Ira Putney & Co., consisting of general merchandise, etc., situated in the Thurber building, owned by Anna Penny, and also all unbalanced accounts on books, and a building situate on southeast one-fourth of southeast one-fourth of west half of section 24, T. 19, 5 west. This bill of sale was signed by Ira Putney &

Co. On the same date a contract was entered into, signed by both Ira Putney and George M. Foote. Putney, by it, was allowed the privilege of buying and selling, and using the stock of goods, but not to incur indebtedness, and Putney agreed to carry on the business at his own expense, without cost to Foote, and to apply all the profits of the business to the payment of the indebtedness of $7,000. The notes indicating said indebtedness are signed by Ira Putney and George M. Foote. The goods were not to be removed without the consent of Foote, Putney to pay all clerk hire, etc.; the business was to be carried on in the name of Putney; the principal and interest of the notes mentioned were to be paid by Ira Putney. Foote was to have all the goods he needed for family uses at wholesale prices; the sum of $7,000 was to be applied and used in the trade.

Ira Putney continued to carry on business in that store until January, 1891, when the goods and building were consumed by fire. The insurance policy was made over to Foote, and he collected it and kept six or eight hundred dollars and put the balance into the business, but in reality Foote never received a "nickel" of the $7,000 to his own use.

On the 26th of January, 1891, a new agreement was entered into between Foote and Putney in substance as follows: In consideration of the contract thereafter named, Putney was allowed the privilege of using the stock of goods and merchandise, of buying and selling merchandise, but not to incur any liens or mortgages on the stock; to pay for all goods when received or when sold; to show books at the end of sixty days. Putney was to carry on the business without cost or expense to Foote, and to apply all profits of business to payment of indebtedness of $7,000, and Ira Putney was to pay all expenses, and to carry on the business in his own name, and to pay the principal and interest of the $7,000. Foote was to have all the goods that he used at cost; the insurance money of $2,400 was a part of the within described $7,000; this money and all goods, etc., to be used and applied in the business; and the $2,400 was turned over

to Putney.  The above was in substance the entire written contract between them.

It will be seen that those contracts, nor either of them, provides who shall own the goods when the $7,000, for which Foote was security, was paid.  Foote, it appears, was security on the four $1,750 notes.  There is no provision in either of the contracts as to what should become of the goods and store, or whose property it should be, when the $7,000, for which Foote was security, was paid in full.

If they were not Putney's then they would be Foote's and Foote would get the benefit of all the goods, as well as Putney's labor, and all expenses paid by him in carrying on the business, and Putney would receive nothing.  Foote would receive this compensation for no services or labor performed by him, simply for going security for Putney on the four $1,750 notes.  There was no evidence going to show that Foote was to be in any wise compensated for standing as surety for Putney.  All that appeared to be in contemplation between them was that Foote should be kept harmless.

The law would determine what the intention of the parties was in that particular, as implied by the contract, and in view of the circumstances in evidence.

There was internal evidence in the agreement that the goods were conveyed as a pledge for surety for the contract; it provides that Putney was to let Foote have what goods he used at cost prices, which, if the goods were absolutely Foote's, he could take as he pleased.

In corroboration of the intentions of the parties, Foote testified that he took the goods to secure him against his liability on the $7,000.

It is a principle of law, if one takes goods to be sold on commission and it is doubtful whether he has become the purchaser, one of the main tests as to whether he is a purchaser or mere agent to sell on commission, is, if he is given the option to pay for the goods and keep them, then it is a sale of the goods, and the title passes to the consignee absolutely as a matter of law.  It is a sale, and the goods are not the property of the consignor.

Admitting that the bill of sale in the first instance passed the title of the goods to Foote, by the accompanying agreement, when the $7,000 was paid by Putney, impliedly the goods became his property, and the latter could pay that at any time and free the goods; so the agreement as a whole was only a pledge or mortgage, and the title in the stock of goods all the time remained in Putney, subject to the implied mortgage contained in the written agreement.

Foote finally took the goods into his own possession and sold them. Can it be doubted that had he realized more than enough to pay those notes, aggregating $7,000 and interest, he would be liable to Putney for the balance? and besides he would be compelled to apply the proceeds of the goods to the payment of the notes in order to relieve Putney of his liability on them.

If he did not, and Putney, as principal, was compelled to pay them, he could call on Foote to account for the amount realized out of the goods; because Foote had received the goods for the purpose of paying the notes.

Foote had no interest in the goods, as can be readily seen from all the facts and circumstances in evidence in connection with the agreement, save as mortgagee, and when the mortgage was paid, any balance went to Putney.

The evidence of Foote shows the contract was entered into for the purpose of security to him, and the law is that even an absolute bill of sale on its face may be shown by evidence to have been given as a mortgage. But such proof in this case would be unnecessary. It is insisted by counsel for appellant that the goods were those of Foote, and that the parties have a right to make just such a contract as they did, even if it would seem to be a foolish one on the part of Ira Putney.

This might be so if the contract, in fact, made such a provision. But as it makes no express provision as to whom the goods shall belong when the security debt shall be paid by Putney, it would be a very unreasonable construction for the court to put on the contract, and to hold that they should go to Foote, who would have paid nothing for them, when justice and equity would require that they

go to Putney. Although Putney may have been willing to labor and pay off the $7,000, on which Foote was security, thereby relieving him of all danger and loss, it does not seem reasonable that he would be willing to turn over all the accumulated property to Foote without compensation. Such a construction would have to be put upon the contract if appellants' contentions are sustained. We can not believe such was the intention of the parties or the meaning of the contract. There was clearly an implied provision in the contract that the remainder of the goods should be Putney's when the $7,000 in notes should be paid.

The finding and judgment of the court below, and its holding on the propositions of law, as submitted to it by the appellants, in our judgment is fully sustained by the evidence and the law. When the case was here before, this court substantially passed upon the question as to the position Foote occupied in relation to the contract. We held that he was simply a mortgagee. We see no good reason for changing our opinion then expressed.

The judgment of the court below is therefore affirmed.